[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This lawsuit arose out of the purchase of a single-family residence in Ridgefield, Connecticut, by Thomas and Jennifer Trillo, a written contract between the Trillos and Home Chek Real Estate Services, Inc. d/b/a Pro Chek Home Inspection Services (Home Chek) for the latter to perform a pre-purchase inspection of the residence, the inspection which took place on January 14, 1998, and the subsequent written inspection report rendered by Home Chek.
The Trillos commenced this action by a complaint which alleged that: (1) Home Chek was negligent in performing the inspection and rendering its report, (2) Home Chek breached its contract, and (3) Home Chek violated the Connecticut Unfair. Practices Act (CUTPA). In its answer, Home Chek denied the material allegations of the complaint and asserted special defenses that: (1) there was a limitation of liability provision in the contract, and (2) that the Trillos were negligent to a degree CT Page 4975 which was equal to or more than any negligence of Home Chek.
The case was tried before the court on November 14, 15 and 16, 2000, and final post trial briefs and submissions were filed on January 12, 2001.
 I BACKGROUND
The Trillos have lived in Ridgefield since 1986. In January, 1998, they learned that a single-family residence at 345 Wilton Road West was for sale, and they toured the older (Mr. Trillo testified he believed the house to be about one hundred years old) three-story house with their broker for a quarter to half an hour. On January 7, 1998, the Trillos made an offer to purchase which was accepted a few days later. The Trillos arranged for an inspection of the house, and Mrs. Trillo signed an inspection contract with Home Chek on January 14, 1998. On that day, the inspection by a Home Chek employee took place. Thomas Trillo (Trillo) testified that he arrived at the house at about 5:00 p.m., after the inspection was completed, and walked the premises with the inspector for about forty-five minutes while the inspector discussed his findings. Trillo further testified that he signed the contract to purchase the 345 Wilton Road West property on January 16, 1998.
The Trillos closed on their purchase of the house in April, 1998, and subsequently, while in the process of renovating the premises, they allege that serious deficiencies in the structure of the house not mentioned in the inspection report were discovered or brought to their attention. The three major deficiencies allegedly omitted in the report were: (1) a sagging beam above the ceiling in the front portion of the living room, next to the room's bay window, (2) a sagging window alcove above the kitchen which compromised a portion of the kitchen ceiling, and (3) structural deterioration in the family room (including a non-working fireplace). Additional facts will be discussed, as necessary, later in this opinion.
 II DISCUSSION A The Inspection Contract
The inspection contract executed by Jennifer Trillo and Home Chek appears to be a pre-printed form entitled "Pro Chek Inspection CT Page 4976 Contract."[1] In the contract, Home Chek agreed to conduct an inspection for the purpose of informing the Trillos of "major deficiencies in the condition of the property." However, the inspection would include "only readily accessible areas" and was limited to visual observations. "Latent and concealed defects and deficiencies" were "excluded from the inspection." The contract also included a limitation on Home Chek's liability for negligence or breach of contract, with the limit being the amount of the fee paid by the customer.
 B The Inspection Report
The written report delivered to the Trillos contained a cover page and a page entitled "Scope of Inspection" which, among other things, stated that the conduct of the inspection "are governed by `Standards of Practice for Home Inspection Report"' produced by the American Society of Home Inspectors (ASHI). The body of the report consisted of ten pages. Two additional pages listed general and preventative maintenance items, and the last three pages appear to be a summary of the ten page report.
The inspection report reveals a house in some distress. The report generally classified inspected components in one of three categories:
 acceptable — refers to functional or sound items at time of inspection, without observed signs of a substantial defect.
 marginal — item observed is partially functional. Needs repair and/or servicing to correct a problem.
 defective — item observed needs immediate repair or replacement because it is failing its intended function.
A number of items, particularly the exterior of the house and the detached garage, were classified as defective. Other items were described as marginal. Water damage was noted as well as the presence of temporary jacks being used for support in the basement.
 C The Evidence At Trial
As set forth in their complaint and reaffirmed during trial, the CT Page 4977 Trillos rely solely on the alleged deficiencies in the written inspection report and not on any oral representations. The evidence at trial tended to show that the inspection report did not identify a visible problem in the front of the living room or the visible problem with the second floor window alcove. With respect to the family room walls and fireplace and chimney issue, the evidence in support of the Trillo's claims was considerably weaker. For instance, evidence of water damage was clearly visible to the untrained eye, was repeatedly noted in the report, and the full extent of deterioration not revealed until the interior walls were removed. The damages claimed by the Trillos were over $25,000 for the family room and fireplace-chimney, over $17,000 for the living room and kitchen, and a little over $7000 for dumpster expenses and loss of use of the house during the period of repairs.
A critical element of establishing the liability of Home Chek is proof that the Trillos relied on the contents of the written inspection report to their detriment. On plaintiffs' direct case, Trillo testified that he and his wife signed the contract to purchase the 345 Wilton Road West property on January 16, 1998, two days after the inspection. This date is confirmed by the contract itself, which shows Trillo's and his wife's signatures being acknowledged on January 16. On at least three different occasions, Trillo testified that he had, or had read, the inspection report before he signed the contract. (Tr., 11/14/00, p. 70; Id. 163; Tr., 11/16/00, p. 78.) He stated that the only concern he had from the report was an area of settlement in the back of the living room which was noted in the report. (Tr., 11/14/00, p. 163.)
Subsequently, evidence was produced by Home Chek that the inspection report was not available on January 16, 1998. The evidence shows that a portion of the seventeen page report, most likely the three page summary, was faxed to Trillo's broker late on January 18, 1996, and the full report was placed in the mail on that day, a Sunday.
On rebuttal, Trillo testified that he had gone skiing with his wife in Vermont on January 17 and 18, returning home on Sunday evening. He left the signed contract with his attorney on Friday with instructions not to deliver it to the sellers' attorney "until I had gotten receipt of the inspection report." (Tr., 11/16/00, p. 75.) On Monday morning, Trillo testified he authorized his attorney to deliver the signed contract. Id., 76. There are at least two difficulties with this rebuttal testimony. It thoroughly contradicts the thrice told tale of reading the inspection report before the Trillos signed the purchase contract. It also fails to establish when, or if, the report was received and considered. Only a summary had been sent to the Trillo's broker by Monday morning. The full report was put in the mail on Sunday and, therefore, it is most unlikely it was received Monday morning. Significantly, after CT Page 4978 effectively recanting his earlier testimony that he read the report before the January 16 contract signing, Trillo, while maintaining he reviewed the report before authorizing delivery of the contract, did not offer any details about when this review took place, and was particularly vague about other specifics.
Trillo also testified that he was aware on January 16, 1998 that another prospective purchaser of 345 Wilton Road West had made a bid which was higher than the $480,000 bid by the Trillos. A fair inference from this and other testimony is that the Trillos were interested in expediting the process of moving toward a signed contract. Trillo testified that the shortcomings of the inspection report in not identifying structural deficiencies inhibited him from negotiating a better purchase price. However, it is of import that not a single one of the many deficiencies noted in the inspection report were ever the subject of discussion, let alone negotiation, with the sellers before the contract was fully signed at the original price offered by the Trillos.
For these reasons, the court determines that the plaintiffs have not established by a preponderance of the credible evidence that they relied on the inspection report to their detriment. Without the element of reliance, the plaintiffs have failed to establish a causal connection between the alleged deficiencies of the report and the claimed damages.
It is axiomatic that to succeed on a negligence claim, the plaintiff must prove a negligent act or omission caused the claimed injury. Similarly, damages for breach of contract are those losses that arise from the breach. An award of contract damages is designed to place a party in the same position as if the contract had not been breached. WestHaven Sound Development Corp. v. West Haven, 201 Conn. 305, 319 (1986). As set forth above, any breach of contract by Home Chek did not damage the Trillos. Having failed to prove reliance, the plaintiffs cannot prove that the alleged negligence or breach caused any monetary loss.
The claim for relief under the Connecticut Unfair Trade Practices Act is premised on the factual allegations of negligence and breach of contract. For that reason, and because there is no evidence that Home Chek's conduct reached the level of an unfair trade practice, the third count is not proven.
The court orders the complaint dismissed.
Adams, J.